IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Criminal Case No. 12-cr-00444-LTB
Civil Case No. 17-cv-01319-LTB

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.

GREGORY L. HOPSON,

        Defendant/Movant.

---

ORDER

---

This matter is before me on a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody filed *pro se* by Defendant-Movant, Gregory L. Hopson. [**Doc #188**] The Government has filed a response to this motion [Doc #194], and Mr. Hopson has filed a reply. [Doc #197] After consideration of the pleadings and attachments filed, I DENY Mr. Hopson's §2255 motion for the reasons set forth below.

### I. Background

Special Agents from Immigration and Customs Enforcement sought and obtained a warrant to search a home located in Westminster, Colorado. The basis for the search warrant was precipitated when a Special Agent in Virginia, as part of a separate investigation, identified several email addresses that had sent or received images of child pornography. One such account, a yahoo email address

known as "anniegirl_11@yahoo.com," exchanged emails including child pornography in February and March of 2010.

Further investigation revealed that someone logged into the anniegirl account on March 2 and 11, 2010, using the same two IP addresses, and that the IP addresses were owned by QWest Communications. A subpoena was issued to QWest who responded that the IP addresses at the relevant times and dates were assigned to a subscriber named "Greg Hopsin" at the Westminster address. A subsequent law enforcement database search identified Mr. Hopson as a registered sex offender who pled guilty to sexual assault on a child while in a position of trust in February 2000. His probation officer indicated that Mr. Hopson was permitted to visit his "girlfriend or wife" at the Westminster address as long as their five-year old daughter was not present during the visit. Agents conducting surveillance subsequently observed a man who appeared to be Mr. Hopson enter the residence at the Westminster address, followed several hours later by an adult woman and a young girl.

The ensuing search of the Westminster address revealed a computer and several CDs containing thousands of images of child pornography. Mr. Hopson was charged with sixteen counts of production, transportation, receipt, and possession of child pornography on October 24, 2012. [Doc #1] Mr. Hopson moved this court, via counsel, for an order suppressing the evidence seized. I denied his motion to suppress on May 29, 2014. [Doc # 78] Mr. Hopson then pled guilty to two counts of

transportation of child pornography and one count of possession, in violation of 18 U.S.C. §2252A(a)(1)&(b)(1) and §2252(a)(5)(B)&(b)(1), while preserving his right to appeal the suppression ruling. I subsequently sentenced him to 420 months of imprisonment.

Mr. Hopson, acting *pro se*, appealed the denial of his motion to suppress to the Court of Appeals. The Tenth Circuit affirmed, holding that: (1) facts contained in the "hypothetical corrected" affidavit in support of the search warrant were sufficient to establish probable cause, and (2) the defendant's prior conviction for sexual assault on a child while in a position of trust was properly considered as part of the totality of the circumstances establishing probable cause. *United States v. Hopson*, 643 F. App'x 694, 697-98 (10th Cir. 2016)(unpublished).

Mr. Hopson now files this motion seeking post-conviction relief pursuant to 28 U.S.C. §2255, which provides that a "prisoner in custody under sentence of a court . . . claiming the right to be released upon the ground that the sentence . . . [is] subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." Mr. Hopson's §2255 motion raises four claims: 1) his trial counsel "failed to correctly litigate Fourth Amendment issues;" 2) "[t]he appellate court's affirmation of probable cause is based on an unreasonable determination of facts in light of the evidence presented;" 3) "[t]he appellate court create[d] hypothetical facts" to reject his challenge to the search warrant affidavit; and 4) the government failed to disclose exculpatory evidence (related to paragraph

3

61 of the search warrant affidavit) in violation of the ruling in *Brady v. Maryland*, 373 U.S. 83 (1963). As a result, Mr. Hopson seeks the following post-conviction relief: 1) that his sentence be vacated; 2) reconsideration of the motion to suppress; 3) "the appellate opinion be voided and a new appellate review be undertaken by a different panel applying the correct facts of the case;" 4) "the case be returned to the district court where the government's admission reg[ar]ding paragraph 61 can be presented and argued;" and 5) "any other relief to which he may be entitled."

## II. Motion to Suppress Ruling

When initially challenging the search warrant at issue, Mr. Hopson argued that the affidavit submitted in support of the search warrant application contained a false statement in the first sentence of paragraph 60 and a conclusory misstatement in paragraph 78(G), and it omitted critical information that, in turn, vitiated a nexus between the child pornography activity by the user of the anniegirl email address and the Westminster residence where the search warrant was executed.

In reviewing the search warrant affidavit, I struck a statement – in the first sentence of paragraph 60 – which indicated that the report/log provided by Yahoo (documenting the internet activity associated the anniegirl account) indicated that an email was sent on March 11, 2010 at 04:41:08 GMT, and another sent on March 2, 2010 at 20:53:33 GMT. The Government conceded that the Yahoo log did not indicate that *emails* were sent, but rather that the user of the email account

anniegirl_11@yahoo.com merely *logged on* to the account on those dates and times. In addition, I struck a conclusory misstatement at paragraph 78(G). Finally, I ruled that omitted information about the anniegirl account user's extensive use of other IP addresses, that were not associated with the Westminster residence address, was not material to the probable cause determination. As such, I concluded that even when the challenged assertions in the first sentence of paragraph 60 and the entirety of paragraph 78G were stricken, and the alleged omitted information about the anniegirl account's extensive use of other IP addresses was considered, there was still ample probable cause supporting the issuance of the warrant. [Doc #78]

### III. Standard of Review

I construe this §2255 motion liberally because Mr. Hopson is a *pro se* litigant, but also note that the Court does not act as a *pro se* litigant's advocate. *Haines v. Kerner*, 404 U.S. 519, 520-2, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### IV. Ineffective Assistance of Counsel

I first address Mr. Hopson's claim that his trial counsel was ineffective in failing to "correctly litigate" his probable cause challenge to the search warrant. The Supreme Court has established a two-prong test to review claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland* test, the defendant must show: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced

the defense.  *Id.* at 687.  If the defendant fails to satisfy either prong of the test, the ineffective assistance of counsel claim fails.  *Id.* at 697; *see also United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2000)(a claim of ineffective assistance of counsel "may be resolved on either performance or prejudice grounds alone.")

For the performance prong, a defendant must show that counsel's representation "fell below an objective standard of reasonableness," that is, "reasonableness under prevailing professional norms."  *Strickland v. Washington*, *supra*, 466 U.S. at 688; *see also Barkell v. Crouse*, 468 F.3d 684, 689 (10th Cir. 2006)(ruling that counsel's performance "must have been completely unreasonable, not merely wrong")(citation omitted).  This review of counsel's performance is "highly deferential" and, in order to determine reasonableness, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland v. Washington, supra*, 466 U.S. at 689.  The court must also make "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.*

As to the prejudice prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different."  *Strickland v. Washington*, *supra*, 466 U.S. at 694.  A "reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  Thus, in order to demonstrate prejudice, a movant under §2255

6

must establish that counsel's performance rendered the proceedings "fundamentally unfair or unreliable." *LaFevers v. Gibson*, 182 F.3d 705, 724 (10th Cir. 1999)("an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective")(quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

## A. Interstate Commerce Nexus

I first address Mr. Hopson's argument that his trial counsel was ineffective when he failed to argue that the search warrant affidavit lacked facts establishing an interstate commerce nexus as required by 18 U.S.C. §2252 and §2252A.

Contrary to Mr. Hopson's argument here, the search warrant affidavit is replete with factual allegations establishing an interstate commerce nexus. The affidavit first notes that the internet, and a user's access to it, allows communication and transfer of data and information across state and national boundaries. [Doc #66 ¶24] The affidavit then sets out the course of the investigation that led to the discovery that the anniegirl email account user exchanged child pornography in February and March of 2010. [Doc #66 ¶32] This included the exchange of child pornography images with an Indiana resident and a United Kingdom resident. [Doc #66 ¶37] The affidavit sets out several email exchanges between the anniegirl email account and the email account of the UK resident – from February 19 through March 3 of 2010 – that reveal either

7

circumstances indicating the exchange of child pornography or that included attached images thereof. [Doc #66 ¶38-55] A subpoena for the anniegirl account was sent to Yahoo. The search warrant affidavit stated, in relevant part, that:

> In reviewing the information provided by Yahoo it was noted that the account was logged into on a regular basis from January 2010 to March 11, 2010. . . . Given that the emails between [the anniegirl account] and [another email account] occurred in February 2010, the IP [internet protocol] addresses attributable to the user of the [anniegirl account] from January to March 11, 2010 are the ones relevant to the investigation. [Doc #66 ¶60]

> A publically available Internet search tool was used to query the IP Address captured by Yahoo when the user of the [anniegirl account] logged into the account on March 2 and March 11, 2010. This query showed that the IP address is owned by QWest. On January 31, 2011 a subpoena was issued to QWest for the IP addresses 97.118.225.48 on March 11, 2010 at 04:41:08 GMT and 174.16.196.186 on March 2, 2010 at 20:53:33 GMT to determine who they were assigned to. [Doc #66 ¶61]

The affidavit then indicates that QWest responded to the subpoena by providing the following subscriber information for the IP addresses at those dates and times: Subscriber Name is Greg Hopsin at the Westminster residence address (as the "subscribers's service address") with a DSL line and an email address of ghopson427@q.com. [Doc #66 ¶62] In addition, QWest confirmed that communication log records reveal that the internet was logged on several times between February 28, 2011 and March 4, 2011 at the Westminster residence address. [Doc #66 ¶76]

Based on the foregoing, the affidavit filed in support of the search warrant issued for the Westminster residence was clearly sufficient to allege travel of child pornography in interstate commerce and thus the search warrant was supported by probable cause of an interstate commerce nexus. *See United States v. Jameson*, 371 F. App'x 963, 965 (10th Cir. 2010)(unpublished)(ruling that affidavit provided probable cause of a interstate travel of the evidence sought that summarized role of computers in distribution and receipt of child pornography, identified and described peer-to-peer file sharing, and described how defendant was identified as the user of the IP address which offered to share several files containing titles consistent with child pornography on a peer-to-peer network); *see also United States v. Morgan*, 748 F.3d 1024, 1033 (10th Cir. 2014)(indicating that "[w]e have decided the Internet is an instrumentality of interstate commerce"); *United States v. Baum*, 542 F. App'x 724, 727 (10th Cir. 2013)(unpublished). And, because an interstate nexus challenge to the affidavit was without merit, Mr. Hopson cannot show that his counsel's performance was deficient, under the performance prong of the *Strickland* test. His ineffective assistance of counsel claim on this basis fails. *Strickland v. Washington*, *supra*, 466 U.S. at 697.

## B. Subject Matter Jurisdiction

In a related claim, Mr. Hopson argue that because the search warrant affidavit did not establish an interstate commerce nexus, his trial counsel was

ineffective when he failed to argue that the search warrant affidavit lacked subject matter jurisdiction.

First, as I have ruled above, the affidavit provided more than sufficient evidence of probable cause for interstate travel. I reject the claim to the extent that Mr. Hopson contends that the Magistrate Judge lacked subject matter jurisdiction to issue the search warrant. *See United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir. 1999)(ruling that "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place")(quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Furthermore, as noted by the Tenth Circuit in Mr. Hopson's direct appeal, to the extent that he is arguing that an interstate commerce nexus is a jurisdictional requirement, such element "is not jurisdictional in the sense that it affects a court's subject matter jurisdiction." *U.S. v. Hopson, supra*, 643 F. App'x at FN. 6 (quoting *United States v. Tush*, 287 F.3d 1294, 1297 (10th Cir. 2002)). The interstate commerce element of a crime does not affect a court's subject matter jurisdiction or its power to adjudicate a case. *U.S. v. Tush, supra*, 287 F.3d at 1297 (noting that the interstate commerce nexus is simply one of the essential elements of the relevant crime; "it is 'jurisdictional' only in the shorthand sense that without that nexus, there can be no federal crime")(quoting *United States v. Martin*, 147 F.3d

529, 531-32 (7th Cir. 1998)). As such, Mr. Hopson's claim that his trial counsel failed to raise the issue of subject matter jurisdiction due to the lack of an interstate nexus in the search warrant affidavit cannot be a basis for an ineffective assistance of counsel claim, and Mr. Hopson cannot show that his counsel's performance was either deficient or prejudicial. *See United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006)(noting that "[i]f the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance.")

### C. Anniegirl Emails

Mr. Hopson also contends that the specific emails sent and received by the anniegirl account should have been stricken from the search warrant affidavit. Specifically, he contends that the specific anniegirl account emails should not have been considered in the probable cause determination "because they are misleadingly presented as coming from Mr. Hopson, a Westminster Colorado resident." [Doc #11 pg. 5] He again argues that his trial counsel's failure to make this argument, when challenging the probable cause determination on the search warrant, constituted ineffective assistance of counsel.

The link between the incriminating evidence (of the transportation, possession and distribution of child pornography found in the anniegirl emails) and Mr. Hopson is the basis for the affidavit's assertion that probable cause existed to believe that evidence of such crimes would be found during a search of the Westminster residence. [Doc #66 ¶79] Mr. Hopson's argument that the anniegirl

11

emails were "misleadingly presenting as coming from him" is unavailing. Rather, the trail of evidence provided in the search warrant affidavit show a likelihood that the anniegirl emails did, in fact, come from Mr. Hopson who was apparently residing at the Westminster address. This logical evidentiary trail is as follows: the anniegirl emails on the relevant dates contained evidence of trading child pornography; the anniegirl account was used and registered to a "Greg Hopsin" at the Westminster address during the relevant time period; Mr. Hopson – who was a registered sex offender after pleading guilty to Sexual Assault on a Child while in a Position of Trust – was connected to the Westminster address in various ways; and then was observed via surveillance to reside at the Westminster address. This evidence is not misleading, but instead provides the logical inferences that, when applying a practical and common-sensical standard to the totality of the circumstances, results in a determination of a fair probability that contraband or evidence of a crime will be found in a particular location. *United States v. Edwards*, 813 F.3d 953, 960 (10th Cir. 2015)(indicating that and affidavit in support of a search warrant must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity)(quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)); *see also Illinois v. Gates*, *supra*, 462 U.S. at 238. Again, because the anniegirl emails were not misleading as to the identity of the sender, but were rather provided to show they contained evidence of the sending and receiving a child pornography from an IP address connected or associated with a particular location, their inclusion in the search

warrant affidavit cannot be the basis for an ineffective assistance of counsel claim, and Mr. Hopson cannot show that his counsel's performance was either deficient or prejudicial. *See U.S. v. Orange, supra*, 447 F.3d at 797.

### D. Knowing and Voluntary Plea

Finally, Mr. Hopson argues that his trial counsel was ineffective in that he was not advised that his plea of guilty would prevent him from directly appealing the interstate nexus/subject matter jurisdiction issue and the misleading inclusion of the specific emails from the anniegirl email account. He argues that if he was aware that he could not seek review of these issues on direct appeal, he would not have agreed to plead guilty.

I first note the Mr. Hopson's argument that his guilty plea was not voluntary is completely belied by the record which reveals that it was entered competently, knowingly, intelligently and voluntarily. [Doc #115 & #166] I note specifically that Plaintiff admitted to the element of interstate commerce both orally on the record, and when signing the Plea Agreement. Furthermore, to the extent that Mr. Hopson contends that his plea was not voluntary – in that he was not aware that he couldn't appeal the inclusion of the anniegirl emails in the search warrant affidavit – his Plea Agreement was conditional upon his "right to appeal in any manner necessary the court's denial of his motion to suppress evidence seized pursuant to search warrants" [Doc #115 pg. 3] and Mr. Hopson did not raise this argument in his direct appeal of the suppression ruling. *U.S. v. Hopson, supra*. Most

13

importantly, however, Mr. Hopson's assertion that his guilty plea was not knowingly made – because he was unable to raise claims related to interstate nexus/subject matter jurisdiction and the inclusion of the emails from the anniegirl email account in the search warrant affidavit – is unavailing because those claims, as discussed above, are without merit.

## V. Challenge to the Ruling on Direct Appeal

Mr. Hopson next claims that the Tenth Circuit's ruling affirming my denial of his motion to suppress the evidence found in the execution of the search warrant, was "based on an unreasonable determination of the facts." As such, he argues that the appellate review was "meaningless" and thus deprived him of his right to due process.

As an initial matter, I agree with the Government that Mr. Hopson's challenge to the Tenth Circuit's ruling on direct appeal is not cognizable in a §2255 motion seeking post-conviction relief. *See United States v. Bolden*, 472 F.3d 750, 751 (10th Cir. 2006)(noting that a §2255 petition is not an appropriate vehicle to raise issues that should have been raised on direct appeal)(citing *United States v. Cook*, 997 F.2d 1312, 1320 (10th Cir. 1993)). Furthermore, it appears that Mr. Hopson is arguing that the Tenth Circuit erred when determining that the search warrant affidavit indicates that "someone logged into the anniegirl account from the IP addressed associated with the Westminster residence on March 2 and 11." *U.S. v. Hopson, supra*, 643 F. App'x at 697. Mr. Hopson argues that this factual

14

determination by the Tenth Circuit is inaccurate because the Government admitted in its appellate briefing that the timestamp identified in paragraph 61 of the search warrant affidavit did not identify those timestamps as the time of anniegirl logins (but rather the information provided in the subpoena sent to QWest in order to determine who the IP addresses were assigned to).

In its appellate briefing, the Government addressed Mr. Hopson's argument that the Magistrate Judge issuing the search warrant should have recognized a facial conflict between paragraphs 60 and 61 of the affidavit as it was written because it indicated that the emails identified in paragraph 60 occurred at the exact same time as the logins identified in paragraph 61. The Government argued that there was no facial conflict because account logins typically precede sending email, it "was reasonable to think that anniegirl logged into the account and emailed on the same day." [Doc #188 pg. 47] In so doing, the Government noted in a footnote to its brief that:

> The email timestamps identified in paragraph 60 are the same timestamps identified in Paragraph 61 for the subpoena sent to QWest. But paragraph 61 does not identify those timestamps as the time of anniegirls logins. Nor is it facially impossible for a login and email to occur during the same second as identical timestamps would indicate. That could happen if an email written during a previous login had failed to send (or been intentionally delayed) and was immediately sent by a subsequent login. [Doc #188 pg. 47 fn. 6]

Mr. Hopson argues that the Government "conceded" in this footnote that the timestamps and corresponding IP address information in paragraph 61 do not

15

indicate a *time* when someone using the anniegirl account logged in from the Westminster house. As a result, he contends that the evidence was that someone using the anniegirl account did not log in from the Westminster home on March 2 or March 11. [Doc #188 pg. 10] Assuming that it is true that there is no evidence that someone logged-in from the Westminster address on those days, that is not what is relied upon by the Tenth Circuit which found that "someone logged into the anniegirl account *from the IP addressed associated with* the Westminster residence on March 2 and 11." *Id.* at 697 (emphasis added). Neither the Tenth Circuit nor this court found that someone logged in on the relevant dates *from* the actual location of the residence in Westminster, but rather that someone logged in with IP addresses that were connected to the Westminster address, leading to a reasonable inference to believe there was a fair probability that particular evidence of a crime or contraband will be found in that particular place. *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001). Thus, even if Mr. Hopson's challenge to the Tenth Circuit's ruling on direct appeal is cognizable, he has misapprehended the factual determination underlying the challenged ruling.

## VI. Claim Under *Brady v. Maryland*

Finally, Mr. Hopson asserts the Government failed to disclose "core information" related to misleading allegations in the search warrant affidavit. Specifically, he contends that the footnote in the Government's appellate briefing – as discussed above – was the first time that the Government "conceded" that the

16

timestamps and corresponding IP address information in paragraph 61 do not indicate a *time* when someone using the anniegirl account logged in. The failure to reveal this "exculpatory" evidence (and instead mislead this court that the logins were made at the times indicated in paragraph 61) is, he contends, a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). He goes on to argue that if this information was not withheld, the motion to suppress would have been granted and he would have chosen to go to trial instead of enter a guilty plea.

Mr. Hopson's argument is again misplaced. The "evidence" that the timestamps in paragraphs 60 do not correspond to the sending of specific email (but instead were actually timestamps of anniegirl account logins) was admitted by the Government at the time of Plaintiff's motion to suppress. The fact that the stricken email timestamps in paragraph 60 are the same timestamps subsequently identified in Paragraph 61 (as indicated in the subpoena sent to QWest) – but that paragraph 61 does not specify those timestamps as the time of the anniegirl logins – was not withheld exculpatory evidence, in violation of *Brady v. Maryland*, *supra,* that in turn effected Mr. Hopson's decision to plead guilty.

ACCORDINGLY, for the reasons stated, I DENY the Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. §2255 [**Doc #188**].

Dated: October   11  , 2017 in Denver, Colorado.

                                    BY THE COURT:

                                     s/Lewis T. Babcock  
                                    LEWIS T. BABCOCK